CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 22 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION**

**TALISHA LASHAYE JOHNSON,**

　　　　　**Plaintiff,**

**v.**　　　　　　　　　　　　　　　**Civil Action No.**　4:23CV00021

**VICTIG BACKGROUND SCREENING
d/b/a VICTIG BACKGROUND CHECKS,
SERVE:　c/o Matt Visser
　　　　　14442 South Center Point Way
　　　　　Bluffdale, Utah 84095**

　　　　　**Defendant.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

　　　　Talisha Lashaye Johnson ("Plaintiff" or "Ms. Johnson") by and through her counsel brings the following Complaint against Victig Background Screening, d/b/a Victig Background Checks ("Defendant" or "Victig") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted felon.

## INTRODUCTION

　　　　1.　　Ther is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

　　　　2.　　Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of felony failure to return rental property greater than $200. Defendant's reporting is grossly inaccurate and untrue.

4.      Plaintiff has never been convicted of a felony in her life.

5.      Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate felony conviction.

6.      Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Danville City – General District Court, Virginia, regarding the failure to return rental property greater than $200 offense prior to publishing Plaintiff's report to her prospective employer.

7.      Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff has never been convicted of felony failure to return rental property greater than $200.

8.      In truth, that charge (failure to return rental property greater than $200) had resulted in, and been disposed of as, a dismissal.

9.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

10.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11.     Defendant's inaccurate report cost Plaintiff a good paying job and job security.

12.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

14.     Talisha Lashaye Johnson ("Plaintiff" or "Ms. Johnson") is a natural person residing in Danville, Virginia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15.     Defendant Victig Background Screening, d/b/a Victig Background Checks ("Defendant" or "Victig") is a Utah corporation doing business throughout the United States, including the State of Virginia and in their District, and has a principal place of business located at 14442 South Center Point Way, Bluffdale, Utah 84065. Defendant may be served through its registered agent Matt Visser, located at 14442 South Center Point Way, Bluffdale, Utah 84065.

16.     Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

17.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18.     Ther Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

22.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

24.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

25.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

26.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

27.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

31.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

33.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

34.     Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

36.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor driving under a revoked or suspended license as a felony failure to return rental property greater than $200.

40.     As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**A.     Plaintiff Applies for a Job with Woodside**

41.     Plaintiff resides in Danville, Virginia, with her two minor children.

42.     For a time, Plaintiff had been a traveling nurse, which required extensive travel; Plaintiff wanted to reduce her travel and to be present for her children and their care.

43.     Plaintiff searched for a local job that would permit her to work full-time and also be more involved and present in her children's lives.

44.     In or about early August 2023, Plaintiff applied for full-time employment as an Assistant Property Manager at Woodside Village ("Woodside").

45.     The Woodside employment offered $21 dollars per hour and was located near Plaintiff's home, vastly reducing her travel time.

46.     After applying to Woodside, Plaintiff successfully completed an interview with Woodside.

47.     On or about August 10, 2023, Woodside extended a job offer to Plaintiff for the position to which she applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report").

48.     Woodside informed that Plaintiff's start date would be August 21, 2023, pending the outcome of the background check report.

49.     Plaintiff has experience working in the property management industry and she looked forward to applying her skills at the new and attractive Woodside job opportunity.

50.     Plaintiff did not anticipate any issues with her background check, and she submitted a resignation notice to her then employer.

**B.      Defendant Published an Inaccurate Background Check Report to Woodside**

51.     Woodside contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

52.     On or about August 11, 2023, Woodside ordered a criminal background check on Plaintiff from Defendant.

53.     On or about August 15, 2023, Plaintiff received a call from her potential employer. The employer told her that the background check was still pending because of some issues with the public records.

54.     Sometime between August 15, 2023, and August 25, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Woodside.

55.     Within that employment report, Defendant published inaccurate information about Plaintiff.

56.     Specifically, Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing felony failure to return rental property greater than $200 conviction from Danville City – General District Court, Virginia, known as Case No. GT13011380-00, which appeared in the employment report as follows (date of birth redacted):



57.     The felony failure to return rental property greater than $200 conviction reported by Defendant about Plaintiff was inaccurate.

58.     Plaintiff had never been convicted of a felony in her life.

59.     A cursory review of the widely available underlying public court records confirms that Plaintiff never pleaded guilty to, nor was ever convicted of, felony failure to return rental property greater than $200. Rather, the public record confirms that Case No. GT13011380-00 is

associated with a traffic misdemeanor for "driving under a revoked or suspended license conviction."

60.     Further, Plaintiff's felony charge of failure to return rental property greater than $200 (Case No. GC14001439-00) had resulted in, and had been disposed of as, a dismissal.

61.     The sole reason the inaccurate felony conviction was reported about Plaintiff was because Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

62.     Further, Defendant had confused the records, imposing the disposition of a misdemeanor conviction (Case No. GT13011380-00) onto those relating to the dismissed charge of failure to return rental property greater than $200 (Case No. GC14001439-00).

63.     Worse yet, Defendant reported a dismissed felony charge from 2014 in an employment report dated in August 2023, more than seven (7) years after the date of the charge, and, upon information and belief, more than seven (7) years after the charge's dismissal.

64.     Had Defendant followed reasonable procedures, it would have discovered that Plaintiff had never been convicted of felony failure to return rental property greater than $200 and that it should not have reported the same.

65.     Upon information and belief, all Virginia criminal public records available from either the public online courts site or obtained from the Office of the Executive Secretary of the Supreme Court of Virginia (OES) contain an explicit disclaimer of the accuracy of the information. Both the online site and the contracts with the OES provide that only Virginia records that are accurate are the original court records obtained directly from the original court.

66.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

67.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer non-conviction information about Plaintiff that was older than seven (7) years, Defendant violated 15 U.S.C. § 1681c.

**C.     Woodside Denies Plaintiff's Job Application**

68.     On or about August 22, 2023, Plaintiff was informed by Woodside that Defendant's report included a felony conviction.

69.     Plaintiff was shocked and distraught to hear that Defendant had reported that she had been convicted of a felony.

70.     Plaintiff explained to Woodside that she had never been convicted of a felony.

71.     But Woodside would not listen to Plaintiff, only to the employment report. In the meantime, Woodside moved Plaintiff's start date to a later date of August 28, 2023.

72.     On or about August 23, 2023, Plaintiff contacted the Danville City – General District Court to inquire about her criminal records. The court clerk confirmed that she did not have any felony convictions. The court clerk further called the Defendant's representative, an agent named "Hannah," to provide her the necessary information to enable Defendant to correct and/or complete the background check report.

73.     On or about August 25, 2023, Plaintiff finally received a copy of the subject employment report, dated August 25, 2023, and was shocked upon reviewing the felony conviction contained within the subject employment report.

74.     Plaintiff contacted Woodside and informed them that she has never been convicted of a felony in her life. In fact, Plaintiff even obtained the underlying court records and provided them to Woodside, which records demonstrated that the felony conviction record reported was grossly inaccurate because the charge had been dismissed.

75.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that she was a convicted felon, both in relation to the Woodside position, but also the impact of the same on her future.

76.     Specifically, Defendant reported a felony theft of rental property conviction that is clearly labeled in the underlying court records as a misdemeanor driving under a revoked or suspended license. The underlying court records were available to Defendant prior to publishing Plaintiff's employment report to Woodside, but Defendant failed to obtain or perform even a cursory review of such information as it was explicitly instructed to do so when it obtained the Virginia records. Neither record should have appeared on Plaintiff's background report.

77.     Defendant has been on notice that its conduct violates the FCRA, but elected to act as it did in order to make more money for itself at the expense of the Plaintiff's consumer rights.

**D.     Plaintiff Disputed the Misinformation in Defendant's Employment Report**

78.     On August 25, 2023, desperate to secure employment with Woodside and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

79.     Plaintiff identified herself and provided information to Defendant to support her dispute.

80.     Plaintiff specifically disputed the inaccurate reporting of a felony failure to return rental property greater than $200 conviction.

81.     Plaintiff specifically asked Defendant to investigate and correct its reporting in any employment report about Plaintiff.

82.     The phone call was followed by an email with court documents attached that demonstrated that Plaintiff had never been convicted of a felony.

83.     On August 29, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and conceding its inaccurate reporting by correcting the report.

84.     Plaintiff continued to follow up with Woodside and she still holds out a hope that the job offer would be reinstated; however, as of September 8, 2023, Woodside has still not extended or renewed its job offer to Plaintiff.

85.     Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Woodside formed a negative opinion about Plaintiff and/or moved on to other candidates.

86.     Defendant's false report cost Plaintiff a promising, well-paying job with Woodside.

87.     The position with Woodside was full-time and Plaintiff was set to earn $21.00 per hour. More importantly, Plaintiff was excited to work as an Assistant Property Manager because she was qualified to successfully perform the work and was passionate about the field.

88.     Further, the Woodside employment weas located in close proximity to her home and she would not need to travel considerable distances to and from her employment.

89.     Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek employment, Plaintiff was unemployed from August 21, 2023, until at least September 8, 2023.

90.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law,

Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

91.     As a result of Defendant's violations of the FCRA, Plaintiff's boyfriend became privy to her criminal past as reported by Defendant, including the dismissed felony charge, who had heretofore not been aware of her past charge of a felony.

92.     As a result of Defendant's violations of the FCRA and Plaintiff's lack of employment and related income, Plaintiff has suffered financially.

93.     As a result, Plaintiff has been unable to timely pay her financial obligations, such as her auto loan payments.

94.     In particular, Plaintiff was unable to timely pay her August 2023 auto loan payment, and she fell behind and was late on that payment. Subsequently, Plaintiff was forced to borrow money from her boyfriend in order to catch up and pay what she owed on her auto loan.

95.     Further, Plaintiff's eldest daughter is currently attending college, and Plaintiff's challenging financial circumstances, caused by Defendant, has deprived her of an ability to support her daughter financially, about which Plaintiff feels deep humiliation and embarrassment.

96.     As a result of Defendant's violations of the FCRA and the significant anxiety and distress it has caused to Plaintiff, Plaintiff has been taking Tyrosine, and over-the-counter mood stabilizer.

97.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and

emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

98.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

99.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

100.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

101.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

102.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

103.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

104.     Defendant willfully violated 15 U.S.C. § 1681e(b) because, for instance, it was on explicit notice that unless it obtained records directly from the original court, the information was not deemed to be accurate. Its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

105.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681c(a)
**Failure to Exclude Adverse Non-Conviction Information that Antedated the Report by More Than Seven Years**

106.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

107.     Within its consumer report about Plaintiff, Defendant failed to exclude at least one adverse record which antedated the report by more than seven years.

108.     The record that Defendant published – a non-conviction record – which antedated the report by more than seven years, is information that Congress deemed to be obsolete and for that reason, should be excluded from consumer reports.

109.     The FCRA prohibits consumer reporting agencies from "mak[ing] any consumer report" that contains "[a]ny [] adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(5).

110.    In violation of Section 1681c(a)(5), Defendant made an employment-based consumer report that contained non-conviction, adverse information which antedated the report by more than seven years.

111.    In particular, Defendant published to Woodside, in a consumer report, a felony concerning Plaintiff that was not a conviction, but rather had been dismissed more than seven (7) years prior to its publishing of such consumer report.

112.    Defendant knew or had reason to know that it was prohibited by the FCRA from publishing the adverse information and should have excluded it because it was a non-conviction record which antedated the report by more than seven years.

113.    Defendant violated 15 U.S.C. § 1681c(a)(5) by reporting an adverse and non-conviction record that antedated the report by more than seven years.

114.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

115.    Defendant willfully violated 15 U.S.C. § 1681c(a) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

116.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

117.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

118.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

119.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

120.    Plaintiff disputed the inaccurate information with Defendant on or about August 25, 2023, and requested that Defendant correct the inaccurate information in the employment report that was highly damaging to her.

121.    In response to Plaintiff's dispute, Defendant purported to have conducted an investigation and removed the disputed record.

122.    However, Defendant's revised post-investigation employment report failed to fully remove the inaccurate and disputed felony record.

123.    In particular, Defendant's revised post-investigation employment report, dated August 28, 2023, contained the following:

29.08.2023, 08:48                    victig.instascreen.net/quickviewdisclosure/view.taz?code=6d9bba3fedefedb4e8c62aad0501eefaccbd1b20

### Investigative

County Criminal Records Search

| RESULTS | **Pending** | | |
|---|---|---|---|
| NAME SEARCHED | FOUNTAIN, TALISHA LASHAYE | SEARCH DATE | 08-28-2023 2:23 PM MDT |
| DOB SEARCHED | 07-13-XXXX | SEARCH SCOPE | |
| JURISDICTION | VA-DANVILLE CITY | | |

PENDING NOTES   08-28-2023 12:22 PM MDT Ophelia Lachen: ETA from Informdata 9/5
08-28-2023 9:07 AM MDT Ophelia Lachen: ETA on recheck should be given today
08-25-2023 4:05 PM MDT Ophelia Lachen: Emailed Deb and Robby to look it over due to case GT13011380-00 not being on the files that the court faxed over, but the charge was mentioned.
08-25-2023 2:11 PM MDT Tannah O'Banion: Applicant had the court fax over inforamtion about her dismissed charges. Only one file was dismissed. GC14001439-01.
We will removed that case but the felony will remain on the report as it was not included in the paperwork.

08-25-2023 9:30 AM MDT Ophelia Lachen: Applicant called disputing charges.
08-21-2023 1:44 PM MDT Ophelia Lachen:We will rush where we can however, this jurisdiction is clerk-assisted and we are at the mercy of the clerks.
08-21-2023 9:09 AM MDT Ophelia Lachen: Rush submitted per the clients request

124.    Thus, Defendant's revised, post-investigation employment report still contained notes that referred to Plaintiff having a felony record, though the report recognized that such record may have been dismissed.

125.    Upon information and belief, Defendant published its revised, post-investigation employment report, dated August 28, 2023, to Woodside, an employer.

126.    Put simply, despite Defendant's apparent and obvious knowledge that it should not continue reporting the dismissed felony record about Plaintiff, it nevertheless continued to publish a consumer report that indicated that Plaintiff had been charged with a felony, though while indicating that such felony may have been dismissed.

127.    Thus, Defendant continued to violate 15 U.S.C. § 1681c(a)(5) and continued to report the dismissed felony record even after and despite (i) having received Plaintiff's dispute,

(ii) completed a purported reinvestigation, and (iii) supposedly removed the offending and unreportable record from Plaintiff's employment report.

128.    The statutory text, purpose, and spirit 15 U.S.C. § 1681c(a)(5) was utterly violated and defeated by Defendant's inclusion of its "PENDING NOTES" that made reference to Plaintiff's having a criminal history that included a felony record.

129.    Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject employment report; and by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's consumer file.

130.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

131.    Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

132.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a)    Determining that Defendant negligently and/or willfully violated the FCRA;

b)    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

d)    Granting further relief, in law or equity, as the Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

**TALISHA LASHAYE JOHNSON**

_____*/s/*_____
Susan M. Rotkis, VSB 40693
**CONSUMER ATTORNEYS**
2290 East Speedway Boulevard
Tucson, Arizona 85719
Telephone: (602) 807-1504
Email: srotkis@consumerattorneys.com

*Attorneys for Plaintiff Talisha Lashaye Johnson*